UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

AMY WATSON

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF
SOCIAL SECURITY

CIVIL ACTION

NO. 15-787-JJB-EWD

# NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 16, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

AMY WATSON

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF
SOCIAL SECURITY

CIVIL ACTION

NO. 15-787-JJB-EWD

## MAGISTRATE JUDGE'S REPORT

Plaintiff, Amy Watson ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income benefits. Plaintiff has filed a Memorandum in Support of Appeal,[1] and the Commissioner has filed a Memorandum in Opposition.[2]

Based on the applicable standard of review under § 405(g) and the analysis which follows, the undersigned recommends that the Commissioner's decision be AFFIRMED.

### I.  Procedural History

Plaintiff filed an application for Supplemental Security Income benefits on October 12, 2012[3] alleging disability beginning August 18, 2007 due to impairments caused by West Nile virus, depression, anxiety, chronic fatigue syndrome, and headaches.[4] Plaintiff's claim was initially denied on January 11, 2013,[5] and thereafter Plaintiff requested a hearing before an

---

[1] R. Doc. 10.  References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR [page number(s)]."

[2] R. Doc. 12.

[3] AR pp. 107-112.

[4] AR p. 107.  During the hearing, Plaintiff amended her alleged disability onset date to July 30, 2012.  AR p. 30.

[5] AR pp. 65-68.

2

Administrative Law Judge ("ALJ").[6]  A hearing was held on September 13, 2013 at which Plaintiff, represented by counsel, testified.[7]  A vocational expert, Lionel Bordelon, also appeared and testified.[8]

On June 23, 2014, the ALJ issued a notice of unfavorable decision.[9]  Thereafter, Plaintiff requested review by the Appeals Council.[10]  On September 24, 2015, the Appeals Council denied Plaintiff's request for review.[11]  Accordingly, Plaintiff exhausted her administrative remedies before filing this action for judicial review and the ALJ' s decision is the Commissioner's final decision for purposes of judicial review.  *See*, 20 C.F.R. § 404.981.

## II.  Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

If substantial evidence supports the Commissioner's findings, they are conclusive and must

---

[6] AR pp. 69-72.

[7] AR pp. 27-52.

[8] AR pp. 27-52.

[9] AR pp. 9-22.

[10] AR p. 8.

[11] AR pp. 1-7.

be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### III. The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In the five-step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents

4

the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:[12]

1. Plaintiff had not engaged in substantial gainful activity since July 30, 2012 (the amended alleged onset date);

2. Plaintiff suffered from the following severe impairments: dysthymic disorder, major depressive disorder, anxiety disorder, history of West Nile virus infection with sequelae of headaches, and hypertension;

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, specifically, Listing 12.04 (Affective Disorders) and Listing 12.06 (Anxiety Related Disorders);

4. Plaintiff retained the residual functional capacity to "perform light work as defined in 20 CFR 416.967(b) except no more than occasional climbing of ramps/stairs, balancing, kneeling, crawling, stooping, and crouching, but never climbing ladders/ropes/scaffolds. She is to avoid all exposure to work place hazards, such as moving machinery and unprotected heights. She is limited to unskilled work. Specifically, she can perform simple routine tasks, involving simple short instructions, and simple work related decisions, with few work place changes. The claimant is further limited to jobs with no requirement to perform math calculations;"[13]

5. Plaintiff had no past relevant work;

6. Plaintiff was considered a younger individual on the date her application was filed;

---

[12] AR pp. 14-22.

[13] AR p. 18.

7. Plaintiff had at least a high school education and was able to communicate in English;

8. Transferability of job skills was not an issue because Plaintiff's past relevant work was unskilled;

9. Considering the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform; and

10. Plaintiff was not disabled beginning July 30, 2012.

### IV. Plaintiff's Allegations of Error

Plaintiff's primary allegation of error is that the "ALJ erred by failing to make findings regarding Plaintiff's ability to work a full 8 hour day, 5 days per week on a sustained basis. The ALJ ignored Plaintiff's arguments including substantial medical evidence which supported that argument."[14] Based on Plaintiff's Memorandum in Support of Appeal, the undersigned considers Plaintiff's primary allegation of error to relate to the ALJ's determination of Plaintiff's RFC, specifically, the ALJ's failure to consider Plaintiff's argument that she could not sustain full time employment (*i.e.*, 8 hours a day, 5 days a week) or include this asserted limitation in Plaintiff's RFC.

In addition to this primary basis for seeking reversal of the ALJ's decision, Plaintiff complains that "[t]he ALJ's analysis also lacks honesty"[15] in that the ALJ "asserts that the Claimant was medication noncompliant. However, she fails to cite such evidence specifically."[16]

---

[14] R. Doc. 10-1, p. 2. *See also*, R. Doc. 10-1, p. 5 ("The ALJ made no findings with respect to Plaintiff's ability to sustain employment on a full-time basis instead presuming an ability to perform [full-time] simple, unskilled work.") & p. 9 ("[T]he ALJ made no findings regarding Plaintiff's ability to sustain employment or her ability to work full-time.").

[15] The court cautions counsel of his ethical obligations. Reasonable people can differ in their analysis of the facts and the law but this court does not condone allegations that an administrative law judge's analysis is "lacking honesty", particularly where, as here, the court finds substantial evidence supports the ALJ's ruling.

[16] R. Doc. 10-1, p. 9. The ALJ specifically stated that "[t]he medical evidence of record shows that the claimant has been non-compliant with medication treatment, pain management referral, and neurology referral." AR p. 20. Plaintiff complains that the ALJ failed to cite any evidence specifically with regard to this statement, and that "treatment records from mental health however, neglect to reveal any such noncompliance with respect to medication…." R. Doc. 10-1, p. 9. Plaintiff cites no legal support for her position that an ALJ's failure to specifically cite the record constitutes reversible error. In any event, the undersigned notes that Plaintiff's treatment records do indicate some instances of

Finally, Plaintiff complains that the ALJ "waited 9 months to issue a decision without any effort to update the record."[17]  Because the undersigned finds Plaintiff's secondary arguments do not require reversal or remand,[18] the undersigned focuses the following analysis on Plaintiff's arguments regarding Plaintiff's ability to work a full 8 hour day, 5 days per week on a sustained basis.

---

medication non-compliance.  *See*, AR p. 319 (December 18, 2012 office encounter note from Oak Grove Family Practice) ("Pt stated that she hasn't taken her medications yet today.  Pt set up to see a neurologist at EKL but is out of her pain medication."); pp. 364 & 367 (April 18, 2013 office encounter note from Oak Grove Family Practice) ("Pt can't afford buspirone and is having anxiety;" "pt feels emotionally worse since last visit but could be related to missing meds; agreed to restart meds as directed…."). With respect to the April 18, 2013 note from Oak Grove Family Practice, the undersigned notes that Plaintiff does not argue that she is disabled *because* she is unable to afford her medications.  As explained by the Fifth Circuit, "[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.  If, however, the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, 'the condition that is disabling in fact continues to be disabling in law.'" *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (citing *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)). Here, the administrative record contains insufficient information to establish Plaintiff's inability to afford her medication, and indicates that Plaintiff is able to obtain medication. *See*, AR p. 357 (April 23, 2013 note indicating "Pt never took Remaron, stating that it could not be dispensed from pharmacy since she had made too much money; however, she is now apparently qualified to get meds from QOL Pharmacy."). *See also*, *Tamez v. Sullivan*, 888 F.3d 334, 336 (5th Cir. 1989) (finding that single disability report referencing that claimant did not have money to fill a prescription was insufficient to establish disability based on an inability to pay for treatment); *Tate v. Colvin*, 2014 WL 4982662, at * 18 (E.D. La. Oct. 6, 2014) ("When '[t]he record contains no further mention of [plaintiff's] ability to pay for ... treatment,' there is 'no reason to conclude that [she] is unable to afford the prescribed treatment ... simply on the ground that [s]he was unable to pay for a prescription' on a single occasion…") (citing *Tamez*, 888 F.3d at 336); *Martinez v. Astrue*, 2010 WL 1946626, at * 3 (N.D. Tex. March 30, 2010) ("Plaintiff argues that the ALJ failed to properly consider his inability to pay for his medications; however, Plaintiff failed to meet his burden of proof on this issue, and has failed to present any evidence at all that he tried to obtain free or low-cost medication and was unsuccessful.").

[17] R. Doc. 10-1, p. 10.  Although Plaintiff asserts that the ALJ failed to update the record, Plaintiff has offered no explanation of what additional information should have been requested, what that information would have shown, or even if such information exists.  Moreover, Plaintiff has presented no support for her position that a nine month period between the hearing before the ALJ and the ALJ's decision was improper.  Finally, Plaintiff has not asserted, much less carried her burden of establishing, that the ALJ's failure to update the record was prejudicial.  *See*, *Lee v. Colvin*, 2015 WL 3604113, at * 5 (M.D. La. June 5, 2015) ("Plaintiff offered no suggestion as to what additional information or records could have been provided that would have had any effect on the ALJ's decision, or that such information or records even exist.  In summary, the plaintiff failed to demonstrate the ALJ had a duty to recontact any of her treating physicians, and even if the ALJ erred by not recontacting them, the plaintiff did not establish she was prejudiced by the error.").

[18] *See*, *supra*, n. 16 & 17.

7

## V.   Law and Analysis

### a.   Residual Functional Capacity[19]

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Here, the ALJ found that Plaintiff had the residual functional capacity to "perform light work…except no more than occasional climbing of ramps/stairs, balancing, kneeling, crawling, stooping and crouching, but never climbing ladders/ropes/scaffolds." The ALJ further limited Plaintiff's RFC "to avoid all exposure to work place hazards, such as moving machinery and unprotected heights." The ALJ limited Plaintiff to "unskilled work. Specifically, she can perform simple routine tasks, involving simple short instructions, and simple work related decisions, with few place changes. [Plaintiff] is further limited to jobs with no requirement to perform math

---

[19] Residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. 20 C.F.R. §§ 404.1545, 416.945.

calculations."[20] Plaintiff does not take issue with any specific limitation set forth in this RFC determination; instead, Plaintiff contends that the evidence she presented "all tended to substantiate Plaintiff's assertions as to an inability to work full-time as well as sustain work over time."[21]

As an initial matter, the undersigned notes that an ALJ is not required to "'make a specific finding regarding the claimant's ability to maintain employment in every case.'" *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005) (citing *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003)). Generally, such a finding is "inherently subsumed in an RFC." *LeDoux v. Colvin*, 2015 5636414, at * 6 (M.D. La. Aug. 31, 2015) ("Although the ALJ did not explicitly find Plaintiff capable of performing work on a sustained basis, this finding is inherently subsumed in an RFC."). An ALJ may be required to make a specific finding regarding the ability to sustain employment when the claimant's alleged disability "waxes and wanes." *Perez*, 415 F.3d at 465.[22] *See also*, *Lee v. Colvin*, 2015 WL 3604133, at * 5 (M.D. La. June 5, 2015) ("As explained and clarified by the Fifth Circuit in *Frank v. Barnhart* and *Perez v. Barnhart*, nothing in *Watson v. Barnhart*, suggests that in every case the ALJ must make a specific finding regarding the claimant's ability to maintain employment. Such a finding is generally implicit in the assessment of the claimant's residual functional capacity. An explicit finding that the claimant can maintain employment is not required, unless there is evidence in the record that the claimant's condition waxes and wanes in

---

[20] AR, p. 18.

[21] R. Doc. 10-1, p. 8. *See also*, R. Doc. 10-1, p. 9 ("Despite alleging that Watson was capable of only less than full-time work, which is wholly consistent with the evidence cited, the ALJ made no findings as to her ability to tolerate a 40 hour work week. Instead, the ALJ presumed an ability to work full-time ignoring all of the evidence and opinions which tended to prove otherwise.").

[22] In *Perez*, the court explained that a finding regarding a claimant's ability to sustain employment might be required where the claimant's alleged disability waxed and waned in its manifestation of disabling symptoms (for example, where a claimant alleged disability based on degenerative disc disease causing loss of movement in her legs every number of weeks). 415 F.3d at 465.

its manifestation of disabling symptoms."); *James v. Astrue*, 2012 WL 4159326, at * 3 (M.D. La. Sept. 18, 2012) ("in order to trigger specific findings regarding the sustainability of employment, plaintiff must set forth evidence of two factors: 1) that her ability to sustain employment is compromised by her depression and/or anxiety symptoms; and 2) her condition, by its very nature, waxes and wanes in its manifestation of disabling symptoms. Also, plaintiff cannot support her claim with conclusory statements; she must submit medical or other evidence to support her claim.") (citing 20 C.R.R. §§ 404.1512(a), 416.912(a)); *Prejean v. Astrue*, 2012 WL 279669, at * 4 (W.D. La. Jan. 12, 2012) ("although [plaintiff] contends that her frequent panic attacks preclude her ability to sustain employment, there is no evidence in the record establishing that the mental impairments [plaintiff] complains about wax and wane in the manifestation of disabling symptoms. Under these circumstances, the ALJ was not required to make a specific finding on [plaintiff's] ability to maintain employment."); *Morton v. Social Sec. Admin.*, 2016 WL 5724810, at * 5 (E.D. La. Sept. 15, 2016) ("Plaintiff simply argues that the 'record in this matter demonstrates' that she has 'mental and physical conditions that wax and wane.' That is simply not enough to carry her burden of proof. She does not specify what that evidence is and how it rises to the level anticipated by *Frank*.").

Plaintiff does not allege that her symptoms wax and wane. Instead, Plaintiff argues that her treatment notes "consistently documented chronic symptoms despite treatment…."[23] Plaintiff's allegedly "chronic" symptoms are contrary to a finding that Plaintiff's symptoms wax and wane. *See*, *Parker v. Barnhart*, 431 F.Supp.2d 665, 670 (E.D. Tex. 2006) ("Here, plaintiff's symptoms are 'chronic' and 'constant.' Plaintiff does not show that his symptoms wax and wane. ALJ Leinberger was not required to make explicit findings regarding plaintiff's ability to maintain

---

[23] R. Doc. 10-1, p. 9.

employment on a regular and sustained basis."). Moreover, Plaintiff cites no case law supporting the position that a claimant with a mental impairment is *de facto* unable to maintain employment. Instead, Plaintiff relies on *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986), for her position that "in this circuit, the ALJ must consider whether a Claimant's mental impairment would prevent sustained employment."[24] The undersigned recognizes that in *Singletary*, the Fifth Circuit found that the ALJ "ignored one very important aspect of [plaintiff's] mental condition: the extent to which his condition prevented him from maintaining regular employment." *Id*. at 822. There, however, plaintiff had "led a wandering, nomadic existence, travelling back and forth between Texas, Mississippi and Louisiana and living in hospitals, bus stations, missions, the woods and homes of relatives." *Id*. at 820. The record reflected that plaintiff had been sporadically employed and had "spent considerable amounts of time in various hospitals and mental institutions." *Id*. Here, the administrative record does not reflect anything close to the same level of mental instability as set forth in *Singletary*. Moreover, and as discussed above, the Fifth Circuit has since clarified that specific findings regarding a claimant's ability to maintain employment are not required in every case. *Perez*, 415 F.3d at 465. *See also*, *Crainey v. Astrue*, 2012 WL 5846406, at * 7 (N.D. Tex. Nov. 1, 2012) ("the Court does not read *Singletary* as standing for the proposition that a claimant with a mental impairment automatically is unable to maintain employment."). Accordingly, the ALJ was not required to make a separate finding regarding Plaintiff's ability to work a full 8 hour day, 5 days per week.[25]

Moreover, the undersigned finds that substantial evidence supports the ALJ's RFC

---

[24] R. Doc. 10-1, p. 7.

[25] Plaintiff's testimony that sometimes she is able to complete tasks for a couple hours per day and sometimes she doesn't "know if I'm making a lot of progress or not" is insufficient to rise to the level of requiring a separate finding. *See*, *Perez*, 415 F.3d at 465 (testimony that claimant had "good days and bad days" not enough to require separate finding).

11

determination, including the implicit finding therein that Plaintiff can perform work consistent with the RFC on a sustained basis. In support of her position that the evidence presented substantiates a finding that she is only capable of part-time work, Plaintiff relies heavily on her therapeutic "treatment goals," which include feeling motivated for 2-3 hours a day and being able to focus on complete tasks for 1-2 hours a day.[26] Plaintiff argues that when these treatment goals "were proffered in the form of a hypothetical to the VE [*i.e.*, a hypothetical wherein Plaintiff's treatment goals were reached], it elicited testimony that Plaintiff could not work full-time."[27] Plaintiff also asserts that her treating psychiatrist, Dr. Crapanzano, opined (in response to Plaintiff's counsel's written questions) that Plaintiff's "mental illness might make sustained full-time work 'difficult'…[and] that concentration could be an issue regarding work."[28] Plaintiff notes that Dr. Kunen, a clinical psychologist consultant, opined that Plaintiff "is in relatively constant emotional distress and experiences chronic fatigue and headaches"[29] and that Dr. Van Hook, another psychologist consultant, found that Plaintiff's "ability to sustain effort and persist at a normal pace over the course of a routine 40-hour workweek is likely thwarted by her medical conditions."[30] Finally, Plaintiff relies on her own testimony that she was fired from one of her part-time jobs because "she couldn't maintain the necessary pace" and her self-reporting that she

---

[26] *See*, AR p. 332 (October 9, 2012 treatment note); AR p. 331 (October 16, 2012 treatment note); AR p. 330 (October 30, 2012 treatment note); AR p. 327 (November 29, 2012 treatment note); AR p. 326 (January 9, 2013 treatment note); AR p. 360 (April 11, 2013 treatment note); AR p. 359 (April 18, 2013 treatment note); AR p. 356 (April 25, 2013 treatment note); AR p. 355 (May 2, 2013 treatment note); AR p. 354 (May 10, 2013 treatment note); AR p. 353 (May 21, 2013 treatment note); AR p. 348 (July 3, 2013 treatment note); AR p. 347 (July 19, 2013 treatment note). The undersigned notes that Plaintiff's treatment goals appear to remain unchanged throughout these notes.

[27] R. Doc. 10-1, p. 9.

[28] R. Doc. 10-1, p. 8.

[29] *See*, AR pp. 340-345.

[30] *See*, AR pp. 254-257.

suffers from "debilitating depression such that she was bed bound for weeks."[31]

Under the regulations and applicable legal standards, the ALJ must consider a claimant's subjective complaints, but may find that those complaints are not credible or are exaggerated. The ALJ is not required to give subjective evidence precedence over objective evidence. 20 C.F.R. §§ 404.1529 and 416.929; 20 C.F.R. §§ 404.1527 and 416.927; Social Security Ruling 96-7p;[32] *Anthony v. Sullivan,* 954 F.2d 289, 295-96 (5th Cir. 1992); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Here, Plaintiff relies primarily on her own "therapeutic goals" of feeling motivated for 2-3 hours a day and being able to focus on complete tasks for 1-2 hours a day. These goals appear to the undersigned to be self-reported/self-developed; moreover, these same treatment notes reflect that Plaintiff reported that she was working (apparently part-time but for greater time periods than set out in her therapeutic goals).[33] While Plaintiff cites to her treating psychiatrist, Dr. Crapanzano's, opinion that Plaintiff's "mental illness and other stressors might make" sustaining full time work "difficult" and that "[c]oncentration could be an issue regarding work…,"[34] the undersigned notes that Dr. Crapanzano specifically opined that full time work "might" be difficult "especially in a high stress/demanding

---

[31] *See*, AR p. 327 (November 29, 2012 therapeutic treatment note reporting that "She has spent the last few weeks bedbound and lethargic.").

[32] TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, SSR 96-7p, 1996 WL 374186.

[33] During the September 13, 2013 hearing, Plaintiff explained that she was working between three to four hours a day, four to five days a week. AR p. 36. *See also*, AR p. 326, January 9, 2013 treatment note ("She does have one job now. She works at a warehouse now and lost the cleaning job for supposedly moving too slowly. She likes this new job a little better."). *See also*, AR p. 347 (July 19, 2013 treatment note), p. 348 (July 3, 2013 treatment note), p. 353 (May 21, 2013 treatment note), p. 354 (May 10, 2013 treatment note), p. 355 (May 2, 2013 treatment note), p. 356 (April 25, 2013 treatment note), p. 359 (April 18, 2013 treatment note), p. 360 (April 11, 2013 treatment note) all noting that "[t]he patient has been working." "Evidence of part-time work that does not satisfy the definition of substantial gainful activity is relevant in assessing plaintiff's credibility, RFC and ability to work." *Porche v. Astrue*, 2013 WL 4046271, at * 4 n. 10 (M.D. La. Aug. 8, 2013) (citing *Murrary v. Astrue*, 419 Fed. Appx. 539 (5th Cir. 2011)).

[34] *See*, AR pp. 369-370.

job,"[35] and that the ALJ's RFC determination limited Plaintiff's work to "simple routine tasks, simple short instructions, and simple work related decisions with few work place changes."[36] Likewise, while Plaintiff argues that Dr. Van Hook found that Plaintiff's "ability to sustain effort and persist at a normal pace over the course of a routine 40-hour workweek is likely thwarted by her medical conditions,"[37] Dr. Van Hook also noted that Plaintiff's motivation and concentration was adequate.[38] Further, and as correctly noted by the ALJ, Dr. Van Hook examined Plaintiff and rendered his opinion prior to Plaintiff's alleged amended disability onset date.[39]

Additionally, other evidence in the administrative record supports the ALJ's RFC determination. In Plaintiff's October 18, 2012 Adult Function Report, Plaintiff stated she was caring for her "disabled 11 year-old-son" who "is toilet trained but otherwise requires 24-hour supervision."[40] Plaintiff also reported therein that she had no problems with personal care; prepared her own meals daily; could do "regular" indoor chores; could follow simple written instructions "ok," very simple spoken instructions "ok," got along with authority figures "ok," and handled stress "ok."[41] Per a September 18, 2012 Independent Behavioral Health Assessment completed by Thomas Cannon, a licensed clinical social worker, Plaintiff reported that medication for her depression was "sort of effective" and her current status was assessed as normal concentration; normal remote and recent memory, normal immediate recall, and with critical

---

[35] AR p. 370.

[36] AR p. 20.

[37] *See*, AR pp. 254-257.

[38] AR p. 256 (noting Plaintiff displayed adequate memorization skills, "showed no difficulty clarifying information or with focus during the interview. Intermediate memory was unremarkable. Long-term memory was intact for specific events and history. Concentration was adequate. Pace was adequate. Basic math skills were adequate. Persistence was adequate.").

[39] *See*, AR pp. 254-257.

[40] AR p. 130.

[41] AR pp. 130-135.

judgment intact.[42] In a September 25, 2012 psychiatric evaluation by Dr. Crapanzano, Plaintiff was assessed as alert, had a cooperative and attentive attitude, exhibited coherent and goal-directed thought process, was fully oriented, and had unimpaired concentration with intact memory and average intelligence.[43] Mental status notes dated July 30, 2012 and April 18, 2013 reflect that Plaintiff was alert, oriented, displayed normal memory function, good concentration, and logical thinking,[44] and an office encounter note from Oak Grove Family Practice dated September 17, 2012 assessed Plaintiff with chronic, but controlled, headaches.[45] While Dr. Kunen, a clinical psychologist who provided a psychological examination report, outlined Plaintiff's difficulties with simple math calculations, such difficulties were taken into account in developing Plaintiff's RFC, which the ALJ limited "to jobs with no requirement to perform math calculations."[46]

"A determination that a claimant is unable to continue working for significant periods of time must…be supported by more than a claimant's personal history; it must also be supported by medical evidence." *Singletary, v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986). *See also*, *James v. Astrue*, 2012 WL 4159326, at * 4 (M.D. La. Sept. 18, 2012) ("while plaintiff makes the conclusory statement that her ability to maintain employment was compromised, she has not put forth any evidence in support of that contention that applies during the relevant time period."). Here, Plaintiff has not presented medical evidence supporting her position that she is unable to sustain employment. *Compare*, *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir.1986) (Substantial

---

[42] AR pp. 293-296.

[43] AR pp. 289-290.

[44] AR p. 266 (July 30, 2012 office encounter note from Oak Grove Family Practice), p. 366 (April 18, 2013 office encounter note from Oak Grove Family Practice). The July 30, 2012 office encounter note additionally reflects that Plaintiff did not appear depressed, irritable, restless, or anxious. AR p. 266.

[45] AR p. 261.

[46] AR p. 18.

evidence did not support finding that claimant could maintain employment where "his judgment was impaired, his insight into his problems was poor, his ability to relate to others was impaired"; prognosis was "guarded"; and "[h]e has been hospitalized repeatedly over a long period of time for psychiatric problems, and the record is replete with discussions of his inappropriate behavior and poor social adjustment."). Accordingly, the undersigned finds that Plaintiff's primary allegation of error – that "ALJ erred by failing to make findings regarding Plaintiff's ability to work a full 8 hour day, 5 days per week on a sustained basis. The ALJ ignored Plaintiff's arguments including substantial medical evidence which supported that argument"[47] – does not require reversal or remand and that instead the final decision of the Commissioner should be affirmed.

## VI. Conclusion

The analysis above demonstrates that Plaintiff's claim of reversible error is without merit. The record considered as a whole supports the finding that the Commissioner applied the proper legal standards and substantial evidence supports the determination that Plaintiff was not disabled.

### RECOMMENDATION

It is the recommendation of the magistrate judge that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security Carolyn W. Colvin, denying the application for Supplemental Security Income benefits filed by plaintiff Amy Watson, be AFFIRMED and this action be DISMISSED.

Signed in Baton Rouge, Louisiana, on February 16, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[47] R. Doc. 10-1, p. 2.